TIMOTHY R. E. KEENEY, COMMISSIONER
OF ENVIRONMENTAL PROTECTION *v.*
FAIRFIELD RESOURCES, INC., ET AL.
(13735)

Spear, Hennessy and Healey, Js.

Argued September 25, 1995—officially released March 14, 1996*

* March 14, 1996, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Nancy Burton*, for the appellants (Laurel Hill Association et al.).

*Leonard A. Fasano*, with whom, on the brief, was *Edward N. Lerner*, for the appellees (defendants).

*Krista E. Trousdale*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Joseph Rubin*, assistant attorney general, for the appellee (plaintiff).

HEALEY, J. This case involves an action commenced in November, 1993, by the plaintiff commissioner of environmental protection (commissioner) against the defendants to enforce certain state environmental laws.[1] The commissioner sought, inter alia, injunctive relief pursuant to certain statutes[2] and orders requiring the defendants to forfeit moneys to the state pursuant to certain statutes for each violation.[3] The trial court denied intervenor status to certain individuals and an association (intervenors), who have appealed from the judgment denying intervention. We conclude that intervenor status should have been granted to each of the intervenors. Accordingly, we reverse the judgment and

[1] The commissioner's complaint in this action is in twelve counts and alleges the violation of a number of statutes, i.e., General Statutes §§ 22a-368 (b), 22a-403 (a), 22a-407, 22a-42a (c), 22a-430 and 22a-427, and §§ 220-10 and 220-7 of the Brookfield town code.

[2] The injunctive relief was sought pursuant to General Statutes §§ 22a-376 (a), 22a-44 (b), 22a-430 (d), 22a-6 (a) (3) and 22a-376 (a) and (b).

[3] The claimed orders for forfeiture of moneys involved General Statutes §§ 22a-44 (b), 22a-438 and 22a-407.

remand the matter with direction to grant the requests to intervene.

We will not set out in this opinion the background circumstances alleged by the commissioner in his complaint in this action. The circumstances are essentially the same as those involved in *Zoning Commission* v. *Fairfield Resources Management, Inc.*, 41 Conn. App. 89, 674 A.2d 1335 (1996) (zoning case), which was argued before this court at the same time as the present appeal. This appeal, which arises out of the same quarry mining operation in Brookfield, involves conduct by the defendants allegedly in violation of a condition of a permit earlier issued by the commissioner to divert certain waters of the state. This appeal also involves other actions by the defendants taken without the required permits and resulting in a diversion of waters of the state, including the construction and maintenance of a dam across Limekiln Brook,[4] the excavation of the streambed of Limekiln Brook and the daily pumping of over 50,000 gallons of water from the sump pump at the mine site. Further allegations include conducting and maintaining a "regulated activity," to wit, the operating of the mine, without a permit,[5] the discharging of materials into the waters of the state at the mine site without a permit, and "causing pollution of the waters of the State." In bringing this action directly to the Superior Court in Hartford, the commissioner exercised one of the options available to him under General Statutes § 22a-430 (d).[6]

---

[4] Limekiln Brook was apparently a stream that the intervenors indicate "used to flow across the site" of the mine.

[5] This claimed activity is alleged to be in violation of state statute as well as the Brookfield town code.

[6] General Statutes § 22a-430 is entitled "Permit for new discharge. Regulations. Renewal. Special category permits or approvals. Limited delegation. General permits."

General Statutes § 22a-430 (d) provides: "If the commissioner finds that any person or municipality has initiated, created or originated or is maintaining any discharge into the waters of the state without a permit as required in

On January 12, 1994, the Brookfield zoning commission (zoning commission), which is the plaintiff in the companion case filed a notice of intervention in this action, purportedly as a matter of right pursuant to General Statutes § 22a-19 (a).[7] In that verified pleading, the zoning commission sets out at length the alleged operation and conduct of the defendants at the mine site without the required permits. It asserts that "the Zoning Commission of Brookfield is charged with the enforcement of state and local zoning regulations and statutes," and it maintains that the defendants continue to conduct their activities on these premises despite the earlier cease and desist order. It further pleads the statutory language, alleging that the natural resources removal activity, dam construction and water diversion constitute "conduct which has, or is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water and other natural resources of the Town of Brookfield and the State of Connecticut."

Thereafter, four separate notices of intervention were filed by Edward C. Huse, the Laurel Hill Association (association), Allen B. Blackman and Lloyd Willcox.[8]

subsection (a) hereof, or in violation of such a permit, he may issue an order to abate pollution which shall include a time schedule for the accomplishment of the necessary steps leading to the abatement of such pollution, *or* notwithstanding any request for a hearing pursuant to section 22a-436 or the pendency of an appeal therefrom, he may request the attorney general to bring an action in the superior court for the judicial district of Hartford-New Britain to enjoin such discharge by such person or municipality until the person or municipality has received a permit from the commissioner or has complied with a permit which the commissioner has issued pursuant to this section. Any such action brought by the attorney general shall have precedence in the order of trial as provided in section 52-191." (Emphasis added.)

[7] Although this notice of intervention by the Brookfield zoning commission sets out that "[p]ursuant to General Statutes § 22a-19, the Brookfield Zoning Commission intervenes as a matter of right in this action as a party plaintiff pursuant to this verified pleading [of fourteen following paragraphs]," it does bear the notation, "Granted 2/1/94."

[8] Huse filed his notice of intervention pursuant to General Statutes § 22a-19 (a) on March 4, 1994, and the association, Blackman and Willcox filed theirs on May 2, 1994.

Each of these four notices sets out that the filer intervenes in these proceedings in accordance with the provisions of § 22a-19 (a). Each filer was denied intervenor status by the court, *O'Neill, J.*, at a hearing on May 31, 1994.

The association filed its notice of intervention through Richard Gereg, its president. That notice alleges, inter alia, that the association is an organization with a membership in excess of 120 persons, whose families own and occupy property in the neighborhood of Laurel Hill Road in Brookfield, and that it was organized to protect residential property values in the Laurel Hill Road vicinity "and to see to it that any and all governmental agencies which have jurisdiction will exercise their jurisdiction properly to ensure enforcement of laws, statutes and regulations enacted to protect and conserve the environment." Incorporating language from § 22a-19 (a), the notice alleges that the proceeding involves "conduct which has or is reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

On May 23, 1994, the defendants filed separate objections to the notice of intervention filed by the association, Blackman and Willcox. Each objection argued that "this case is not an 'administrative, licensing or other proceeding' . . . nor . . . a review of any administrative, licensing or other proceeding. This case is an enforcement action brought by the Commissioner of Environmental Protection ('DEP') in which the DEP has sought injunctive relief and forfeiture damages." Each objection states further that the intervenors' "basis for intervention is misplaced, and they should not be permitted to intervene in this case as a matter of right."[9]

---

[9] None of the intervenors notice of intervention alleged intervention "as a matter or right." In any event, counsel filing these objections to the notice

On May 31, 1994, a hearing was held in the Hartford Superior Court before Judge O'Neill, on the defendants' objections to intervention by the proposed intervenors. The case of *Polymer Resources, Ltd.* v. *Keeney*, 32 Conn. App. 340, 629 A.2d 447 (1993), and particularly footnote 9 of that opinion, appeared to control the court's decision sustaining the defendants' objection to the intervention of the four proposed intervenors. Early in that hearing, the court asked the intervenors' counsel: "How do you get around footnote 9" of the Appellate Court's *Polymer* decision.[10] While agreeing that this was an environmental action as well as an "original action," the trial court rejected the claim that the language of § 22a-19 (a) was ambiguous and declined to examine its legislative history. In that context, the commissioner, in supporting intervention, argued in that court that the legislative history clearly demonstrated the intent to ensure citizen participation in environmental matters. In doing so, the commissioner pointed to that portion of the legislative history that demonstrated the legislature's intention to allow citizen intervention in environmental cases. In that regard, the legislative debate on this legislation indicated an intent to expand access to the courts in "alleged polluting activity." 14 H.R. Proc., Pt. 2, 1971 Sess., p. 739, remarks of Representative John F. Papandrea. The trial court opined that the legislature

---

of intervention in this case had argued, in opposing intervention in the companion case (before Judge Stodolink) that "they can assert their intervenor's rights in the environmental case pending in Hartford" and that "they have their forum in Hartford and they have their forum in Brookfield."

[10] This footnote states: "We note that the general language 'other proceeding' follows the specific terms 'administrative' and 'licensing' proceedings in the statute. 'The general terms will be construed to embrace things of the same general kind or character as those specifically enumerated.' *State* v. *Russell*, 218 Conn. 273, 278, 588 A.2d 1376 (1991); *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 104 n.31, 612 A.2d 1130 1992). This rule of construction is frequently referred to as ejusdem generis. *Cheshire Mortgage Service, Inc.* v. *Montes*, supra [104 n.21]." *Polymer Resources, Ltd.* v. *Keeney*, supra, 32 Conn. App. 347 n.9.

"has given us two paths" and referred to General Statutes §§ 22a-16[11] and 22a-19 (a). Section 22a-16 permits the maintaining of an independent action for obtaining relief against alleged unreasonable pollution. Section 22a-19 permits intervention "[i]n any administrative, licensing or other proceeding, and in any judicial review thereof made available by law . . . ." That broad language strongly suggests citizen intervention at both the judicial level as well as what may be generally denominated the "agency" level. The trial court stated that §§ 22a-16 and 22a-19 had to be read together. The trial court stated that doing so "reinforced [his] view that one is for an action, which intervenors can certainly bring and one is for review of administrative proceedings." The trial court stated, "I have to follow the Connecticut Appellate Court," referring to the Appellate Court's decision in *Polymer*. The court thereupon sustained the defendants' objections to all four who had filed to intervene. The unsuccessful intervenors have appealed from the judgment denying § 22a-19 intervention.

On appeal, the intervenors claim that they properly pleaded § 22a-19 (a), that they have the right to inter-

[11] General Statutes § 22a-16, which is entitled "Action for declaratory and equitable relief against unreasonable pollution," provides: "The attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford-New Britain, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction provided no such action shall be maintained against the state for pollution of real property acquired by the state under subsection (e) of section 22a-133m, where the spill or discharge which caused the pollution occurred prior to the acquisition of the property by the state."

vene in this action under the clear authority of *Connecticut Water Co.* v. *Beausoleil*, 204 Conn. 38, 526 A.2d 1329 (1987), and that the denial of § 22a-19 (a) intervention thwarts the legislative purpose of the Environmental Protection Act (EPA), General Statutes § 22a-1 et seq.

The commissioner raises two questions[12] in this appeal: whether the intervenors should be allowed to intervene in these cases under § 22a-19 (a) and whether the trial court improperly relied on the Appellate Court's decision in *Polymer* in denying intervention. We incorporate in this opinion all that we said in the companion zoning case about the legal viability of the Appellate Court's *Polymer* decision, including its availability as an advisory opinion. See *Zoning Commission* v. *Fairfield Resources Management, Inc.*, supra, 41 Conn. App. 89.

The intervenors argue that they have properly pleaded § 22a-19 (a) intervention. The defendants have not raised any question about that claim and it appears to us that the intervenors have properly pleaded § 22a-19 (a) intervention.

We discuss the other claims of the intervenors together as they are interrelated to the consideration and resolution of whether they are entitled to intervene under § 22a-19 (a). The intervenors claim a right to intervene under the authority of *Connecticut Water Co.*, appearing to premise that argument on the ground that in that case the Supreme Court "ruled" that the enforcement action of the commissioner "involved a judicial review of an action arising out of the particular jurisdiction of the commissioner." They maintain that the statute, which requires a liberal construction and has the broad purpose to "give private citizens a voice" on environmental issues, would effectively be thwarted by denying intervention and thus proscribing citizen input.

---

[12] In the trial court the plaintiff commissioner filed a brief supporting intervention and so argued at the hearing on it in that court.

Intervention, they maintain, "is automatically permissible and mandatory in such Superior Court actions," and here they specifically refer to actions brought under § 22a-430 (a).

Not only does the commissioner argue in support of intervention, but he stresses that the "very broad" language of § 22a-19 (a), i.e., "administrative, licensing or other proceeding," which, in this case, the commissioner claims is not clear, also supports intervention. The commissioner argues that the language is very broad and that it "indicates an intent to permit intervention in a wide variety of proceedings and fora." The commissioner further asserts that there is "[n]othing in the statutory language [to indicate] that an entity may intervene only in an administrative appeal or a proceeding otherwise limited to an administrative record" and that "[i]f the legislature had intended to limit the application of § 22a-19 (a) to administrative appeals, it could easily have done so by using those words." The intervenors argue that the language of § 22a-19 (a) is clear and that it affords them the right to intervene under § 22a-19 (a).

The commissioner maintains that the language is not clear but that the legislative history, the statute's clear purpose, and the case law require that intervention be granted here. Specifically, he contends that "the words 'administrative' and 'licensing' cover the universe of agency proceedings" and, if the words "other proceeding" are to be given meaning, they can refer only to court proceedings, such as the commissioner's and the zoning commission's enforcement actions in these cases.[13] He also claims that the legislative history of the EPA, of which § 22a-19 (a) is a part, "supports the view

[13] The commissioner instituted the Superior Court action that generated this appeal and, in addition, supported intervention in the zoning case as an amicus in this court.

that the clear purpose of the statute was to give citizens direct access to the courts to enforce environmental laws."

The commissioner further invokes the tenet that remedial statutes such as the EPA "should be liberally construed to achieve their purpose." Rather than turning to the doctrine of ejusdem generis in determining the meaning of "other proceeding"[14] in § 22a-19 (a), we are urged by the commissioner to employ, inter alia, the rule of statutory construction "that a statute should be construed as a whole where particular words or sections of the statute, considered separately, are lacking in precision of meaning." *State* v. *Burney*, 189 Conn. 321, 326, 455 A.2d 1335 (1983); see *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 756, 601 A.2d 1005 (1992).

The defendants, on the other hand, urge that the denial of intervention was proper. They argue that correct statutory interpretation of § 22a-19 (a) requires the conclusion that intervention "is not mandated in this particular action." They argue that to decide the issues presented it is necessary to determine the meaning of the words "or other proceeding" in § 22a-19 (a), and they refer to other portions of the statutory scheme including General Statutes §§ 22a-16 and 22a-18. The defendants claim that it is clear that the legislature in using the words "other proceeding" in § 22a-19 (a) "intended the other proceeding to mean a proceeding akin to an administrative or licensing proceeding and not a proceeding brought directly in court by the attorney general" as was this action.

---

[14] The commissioner opposed the application of this court's *Polymer* decision in the trial court, which case he believed was one on which this court "apparently relied" on the doctrine of ejusdem generis. In urging his view of "other proceeding" in § 22a-19 (a), the commissioner, likewise was against its use there to prevent citizen intervention. In this case, he argues that the doctrine of ejusdem generis should not apply, given the demonstrated contrary intent shown by the legislative history. In doing so, he refers to *State* v. *Russell*, 218 Conn. 273, 278, 588 A.2d 1376 (1991).

We note that, in the context of this claim, the defendants refer to the Appellate Court's decision in *Polymer*. They state that "in [*Polymer*] the Appellate Court ruled [in a case in which] the plaintiff entities brought an action alleging the [commissioner] violated [their] civil rights. This was not an appeal from an administrative hearing or a judicial review of such hearing." The defendants argue that the commissioner's complaint in the present action makes claims for monetary damages and injunctive relief that were not the subject of administrative hearings, and "no administrative hearing was waived." Therefore, the defendants contend that the trial court acted properly in following the Appellate Court's decision in *Polymer*, maintaining that there "was no indication in that case that it was limited specifically to a civil rights proceeding, but rather directly limited § 22a-19 (a) to those instances intended by the legislature, i.e., a case that evolved from a licensing, administrative or similar proceeding." The defendants argue not only that the Appellate Court's decision in *Polymer*[15] is not an advisory opinion but that it was not rendered "moot" by *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 630 A.2d 1304 (1993), and, even if the Appellate Court's decision in *Polymer* is not given "precedential authority," it should be recognized as "the highest form of persuasive authority."

Finally, the defendants dispute the claim of the intervenors that *Connecticut Water Co.* is clear authority for their right to intervene. In doing so, their argument is twofold: first, the issue of intervention was never a controversy in that case, and, second, *Connecticut Water Co.* "involved a judicial review of an action arising out of the particular jurisdiction of the commissioner in which a hearing could have been sought but for which no hearing was sought. See [General Statutes §§] 22a-

---

[15] We outline the claims of the defendants as to the Appellate Court's decision in *Polymer* only to demonstrate their reliance on it in this appeal.

432 and 22a-436 . . . ." The present case, the defendants claim, "involves § 22a-430 (d), which gives the commissioner the right to bring a *proceeding* separate and apart from any hearing." (Emphasis added.) They argue that "[s]ince there is no license, administrative or other similar procedure involved, there is no authority upon which to presume intervention under § 22a-19."

"The objective of statutory construction is to give effect to the intended purpose of the legislature." (Internal quotation marks omitted.) *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 225, 602 A.2d 1019 (1992). "As is true in every case involving the construction of a statute, our starting point must be the language employed by the legislature." *Verdon* v. *Transamerica Ins. Co.*, 187 Conn. 363, 366, 446 A.2d 3 (1982); see *United States* v. *Turkette*, 452 U.S. 576, 580, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981); *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 391, 618 A.2d 1340 (1993). In *Groton* v. *Yankee Gas Services Co.*, 224 Conn. 675, 689, 620 A.2d 771 (1993), our Supreme Court stated: "In interpreting the language of a statute, we are guided by the premise that we must consider the statute as written and read it as a whole. *Orticelli* v. *Powers*, 197 Conn. 9, 13–14, 495 A.2d 1023 (1985). [N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous. Insofar as it is possible, the entire enactment is to be harmonized, each part made operative. . . . *Peck* v. *Jacquemin*, 196 Conn. 53, 66, 491 A.2d 1043 (1985). We approach this task mindful of the assumption that the legislature intended to accomplish a reasonable and rational result. Id." (Internal quotation marks omitted.) In statutory construction, "[o]ur task is to find the expressed intent of the legislature, 'that is, the intention of the legislative body, "as found from the words

employed to make it manifest." '. . . We seek the intent of the legislature 'not in what it meant to say, but in what it did say.' " (Citation omitted.) *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 186–87, 592 A.2d 912 (1991). "If that language is plain and unambiguous, we go no further. . . . If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, [the court] will seek guidance from 'extrinsic aids,' e.g., the legislative history." (Citation omitted.) Id., 187. The axiom, however, that "where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary . . . only applies in full force . . . [w]here . . . the language of a statute is . . . *absolutely* clear on its face and where no ambiguity is raised in applying the statute in a particular case. . . . *Anderson* v. *Ludgin*, 175 Conn. 545, 554, 400 A.2d 712 (1978) . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission*, 219 Conn. 685, 692, 595 A.2d 313 (1991); see *Rose* v. *Freedom of Information Commission*, supra, 225. It is basic that common sense must be used in statutory construction and that "[a] statute should not be interpreted in any way to thwart its purpose . . . [or so as to lead] to absurd consequences and bizarre results." (Citations omitted; internal quotation marks omitted.) *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 666–67, 560 A.2d 975 (1989); *Evening Sentinel* v. *National Organization for Women*, 168 Conn. 26, 31, 357 A.2d 498 (1975).

Environmental statutes, such as our EPA, of which § 22a-19 (a)[16] is now a part, are considered remedial in

[16] Public Acts 1971, No. 96, was entitled: "The Environmental Protection Act of 1971." Sections 1 through 6 of that act are now codified at General Statutes §§ 22a-14 through 22a-19.

nature and are to be construed liberally to accomplish their purpose. *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 382, 627 A.2d 1296 (1993); *Carothers* v. *Capozziello*, 215 Conn. 82, 122, 574 A.2d 1268 (1990); *Manchester Environmental Coalition* v. *Stockton*, 184 Conn. 51, 57, 441 A.2d 68 (1981); *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 487, 400 A.2d 726 (1978). Public Acts 1971, No. 872, § 1, entitled "Environmental Protection Department and State Policy," in proclaiming the broad policy behind its enactment, provides in part: "The air, water, land and other natural resources, taken for granted since the settlement of the state, are now recognized as finite and precious. . . . [H]uman activity must be guided by and in harmony with the system of relationships among the elements of nature. . . . [T]he policy of the state of Connecticut is to conserve, improve and protect its natural resources and environment . . . ." See General Statutes § 22a-1; *Paige* v. *Town Plan & Zoning Commission*, 235 Conn. 448, 456, 668 A.2d 340 (1995).

Public Acts 1971, No. 96, § 2, now codified at General Statutes § 22a-15, entitled "Declaration of Policy" provides: "It is hereby found and declared that there is a public trust in the air, water and other natural resources of the state of Connecticut and that *each person* is entitled to the protection, preservation and enhancement of the same. It is further found and declared that it is in the public interest to provide *all persons* with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." (Emphasis added.)

The opposition to intervention seems to be that the phrase "other proceeding" in § 22a-19 (a) means "a proceeding akin to an administrative or licensing proceeding and not a proceeding brought directly in court by the attorney general" and that that phrase limits § 22a-

19 "to those instances intended by the legislature, i.e., a case that evolved from a licensing, administrative or similar proceeding." Therefore, the defendants argue that because the commissioner brought this case directly in the Superior Court under § 22a-430 (d) and, as such, it is a proceeding separate and apart from any hearing, and because there is no licensing, administrative or other similar proceeding involved, there is no authority on which to presume intervention under § 22a-19. We are not persuaded by these claims.

We are mindful that the declaration of policy in § 22a-15 applies to "each person," and indeed to "all persons," suggesting, at the very least, public input; and that the result contended for by the defendants would work a complete bar to intervention by the plaintiffs under § 22a-19 (a) in this case merely because § 22a-430 (d) was the vehicle used by the commissioner. The question arises whether the "other proceeding" language of § 22a-19 (a) is ambiguous. There is ambiguity. The principle that "[w]here the meaning of a statutory term is clear, it is said to be unambiguous and not subject to modification by construction" is "somewhat deceptive, for a term which, in isolation, appears to be clear, may be modified by its context." *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 57, 392 A.2d 491 (1978). "Where the words of a statute fail to indicate clearly whether the provision applies in certain circumstances, it must be construed by this court . . . . *Board of Trustees* v. *Freedom of Information Commission*, 181 Conn. 544, 550, 436 A.2d 266 (1980)." (Internal quotation marks omitted.) *Carothers* v. *Capozziello*, supra, 215 Conn. 120. We believe that the words "any . . . other proceeding" in § 22a-19 (a) are ambiguous in the context of whether their meaning prohibits the plaintiffs from intervening in this action brought directly to the Superior Court by the attorney general under § 22a-430 (d). Under our approach to statutory construction, we are

guided by the language of the statute, its purpose, its legislative history and the circumstances surrounding its enactment.

Turning to the legislative history of the 1971 EPA, of which the present § 22a-19 (a) was a part, we see that the purpose of the act is set out in General Statutes § 22a-15. That section provides: "It is hereby found and declared that there is a public trust in the air, water and other natural resources of the state of Connecticut and that *each person* is entitled to the protection, preservation and enhancement of the same. It is further found and declared that it is in the public interest to provide *all persons* with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." (Emphasis added.)

We note the all encompassing language of "each person" and "all persons" whom the legislature intended to include in its broad sweep. 14 H.R. Proc., Pt. 2, 1971 Sess., pp. 737–44. It is, however, certain remarks on the floor of the legislature during the debate on its passage that illuminate our inquiry. Representative Papandrea, deputy majority leader, speaking in favor of passage of the act, said: "[I]t expands the right of a person to have access to the courts when property which we might say belongs to all of the public is jeopardized by the alleged polluting activity. Presently a person, unless he can show a personal direct ownership or other interests in the land which he claims as being affected by the alleged activity does not have legal standing in the court of law. Consequently, some of the most beautiful aspects of our environment, some of those most vital not only to our survival, but to that of future generations are such that they do not lend themselves to a proprietary or a personal interest and this bill makes the guaranteeing and the preservation

and the protection of these rights available to the general public which they are not presently under our law." Id., p. 739.

Another supporter of the proposed bill, Senator Roger W. Eddy, said, "What we are attempting to do here, is beginning in our own way to let the citizens say that they have at stake, the right to live in clean air, clean water and a generally favorable environment." 14 S. Proc., Pt. 3, 1971 Sess., p. 1084. Another supporter said: "And I do think this is a necessary bill because it may well prod many of our state agencies charged with the protection of the environment on a state level. It may well prod these agencies into more thorough and responsive carrying out of the legislative programs. I think this bill does show the concern of the legislature for the environmental crisis in this state . . . ." 14 H.R. Proc., Pt. 2, 1971 Sess., p. 745, remarks of Representative Francis Collins. It was recognized that the bill was "granting individual citizens some powerful weapons, the right to seek injunctions, the right to intervene in proceedings." 14 S. Proc., Pt. 3, 1971 Sess., p. 1083, remarks of Senator Thomas Dowd. The intent to afford the opportunity to any citizen to participate in raising environmental issues, either by way of instituting actions as in § 22a-18 or by intervention in such matters as in § 22a-19 (a), is unmistakable.

The claim has been made that intervention is quite appropriate here under the "any . . . other proceeding" language of § 22a-19 (a).[17] We do not believe that, in resolving this issue, the rule of construction frequently referred to as ejusdem generis, in the fact pattern of this case, is any bar to such a conclusion. "According to the rule of ejusdem generis, *unless a contrary intent appears*, where general terms are followed by specific in a statute, the general terms will be construed to

---

[17] Here we refer to the language of § 22a-19 (a) which provides: "In any administrative, licensing or other proceeding . . . ."

embrace things of the same general kind or character as those specifically enumerated." (Emphasis added.) *State* v. *Russell,* 218 Conn. 273, 278, 588 A.2d 1376 (1991). However, "[e]jusdem generis . . . like other canons of statutory construction [is] only an aid to the ascertainment of the true meaning of the [words of a] statute. It is neither final nor exclusive. To ascertain the meaning of the words of a statute, [those words] may be submitted to the test of all appropriate canons of statutory construction, of which . . . ejusdem generis is only one. If, upon a consideration of the context and the objects sought to be attained and of the act as a whole, it adequately appears that the general words were not used in the restricted sense suggested by the rule, we must give effect to the conclusion afforded by the wider view in order that the will of the legislature shall not fail." *Helvering* v. *Stockholms Enskilda Bank,* 293 U.S. 84, 89, 55 S. Ct. 50, 79 L. Ed. 211 (1934). Here, a contrary legislative intent appears, and ejusdem generis is not applicable.

In determining that the present action instituted under § 22a-430 (d) is a "proceeding" that falls within the broad "any . . . other proceeding" language of § 22a-19 (a), we note several other matters that support our conclusion. There is nothing in the statute that suggests that intervention is limited to a situation where there is some administrative record. The portion of § 22a-430 (d) under which this action was brought was already law when § 22a-19 (a) was enacted. The legislature is presumed to act "with knowledge and understanding of existing relevant statutes, and with the intent to achieve a harmonious and consistent body of law." *Vartuli* v. *Sotire,* 192 Conn. 353, 362, 472 A.2d 336 (1984); *Caulkins* v. *Petrillo,* 200 Conn. 713, 718, 513 A.2d 43 (1986). We glean nothing from the legislative history that suggests that the intervenors must be rele-

gated to instituting their own action under § 22a-18[18] rather than seeking to intervene under § 22a-19 (a).

Further, it is a basic proposition of law that "[a] statute should be construed so as to give effect to the legislative intent, while keeping in view the object of the statute." *Stephen Reney Memorial Fund* v. *Old Saybrook*, 4 Conn. App. 111, 113, 492 A.2d 533 (1985); *State* v. *Harris*, 14 Conn. App. 244, 250, 540 A.2d 395 (1988). Our construction of § 22a-19 (a) does this. "A statute should be construed so as to have meaning, so that the statute makes common sense, and so that there are no bizarre results." *Knapp* v. *Inland Wetlands Commission*, 7 Conn. App. 283, 285, 508 A.2d 804, cert. denied, 200 Conn. 807, 512 A.2d 230 (1986). Section 22a-19 (a) should be so viewed, for to say otherwise would defy common sense and mean that there would be no intervention at all in this case because it involved an action brought directly to the Superior Court pursuant to § 22a-430 (d). Nothing has been brought to our attention, nor have we found anything, to suggest that the legislature had any intent to exclude an action brought pursuant to § 22a-430 (d). This present action, which is brought under § 22a-430 (d), certainly raises environmental issues, and it was for the raising of such issues that § 22a-19 (a) was intended by the legislature. See *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, 212 Conn. 727, 734, 563 A.2d 1347 (1989); *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 248 n.2, 470 A.2d 1214 (1984). Our construction of the statute advances its remedial purpose.

For the foregoing reasons, we conclude that the trial court improperly denied intervenor status.

---

[18] We note that the legislature knows when to include language of delimitation when it means to do so. For example, in § 22a-18 (b), it did so where it used the word "such" in the first sentence. That subsection provides: "If administrative, licensing or other such proceedings are required . . . ."

The judgment is reversed and the case is remanded with direction to grant the requests to intervene.

In this opinion the other judges concurred.