[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is a companion case to Jennifer R. Boyd v. VivisectionInvestigation League, Inc. a/k/a The Last Post Animal Sanctuary (Docket No. CV-99-0080108-S). The plaintiffs in both cases are sisters whose employment with the defendant was terminated under the same set of circumstances and on the same date. The Substituted Complaints in both cases are virtually identical; the causes of action alleged are the same.
The defendant has filed a Motion to Strike with a supporting memorandum of law in each case; in each case, they are identical. The plaintiff has filed a memorandum of law in opposition to that motion in both cases; they mirror each other. It is therefore so that the court's ruling in this case governs the companion case as well. Oral argument was heard by the court.
The gist of the plaintiff's Substituted Complaint dated December 13, 1999, is that the defendant, which conducts an animal sanctuary or shelter in Falls Village, Connecticut, and had employed the plaintiff as an animal caretaker for several years prior to August 22, 1997, showed preferential treatment to a co-employee (one Sheila Ball — hereinafter, Ball) and fired the plaintiff for her response to such treatment. It is relevant to an understanding of the issues that Ball was a single mother with a child and that the plaintiff, and most of the other employees, was young, childless, and single. The plaintiff claims Ball received favored treatment from the defendant in that Ball was not required to work overtime when the plaintiff and several other single, childless employees were so required to do, Ball did not have to make up time lost from work when she was required to leave work early on occasion and the other employees were so required, Ball did not have to attend employment functions when the others did, etc. The plaintiff has asserted the following ten (10) employment related causes of action:
 Count One: Discrimination based on marital status and/or familial responsibility under Conn. Gen. Stat. § 46a-60 (a)(1) and (9);
 Count Two: Retaliation based on opposition to discriminatory practices in violation of C.G.S. § 46a-60 (a)(4);
Count Three: Sexual harassment in violation of C.G.S. § 46a-60;
 Count Four: Wrongful discharge in violation of public policy as set forth in Sections 31-236-26
CT Page 10629 (2) and 31-236-26b of the Regulations of Connecticut State Agencies;
 Count Five: Wrongful discharge in violation of public policy as set forth in C.G.S. § 46a-60
(a);
 Count Six: Breach of the Implied Covenant of Good Faith and Fair Dealing in violation of C.G.S. § 46a-60 (a);
Count Seven: Negligent infliction of emotional distress;
 Count Eight: Wrongful failure to pay wages under C.G.S. §§ 31-71c and 31-72;
Count Nine: Breach of contract; and
Count Ten: Unjust enrichment.
The plaintiff also seeks punitive damages in Paragraph 4 of her claim for relief and, in Paragraph 6 of her claim for relief and Paragraph 35 of Count Eight, seeks twice the full amount of the wages claimed in Count Seven together with costs and reasonable attorney fees.
The defendant has moved to strike all but Counts Eight and Ten as well as Paragraphs 4 and 6 of the claim for relief and Paragraph 35 of Count Eight.
The motion to strike is used to test the legal sufficiency of a pleading. RK Contractors, Inc. v. Fusco Corp., 231 Conn. 381, 384 (1994). For the purpose of a motion to strike, the moving party admits all facts well pleaded. Ferryman v. Groton, 212 Conn. 138, 142 (1989). The court must construe the facts in the complaint most favorably to the plaintiff. Faulkner v. United Technologies Corp., 240 Conn. 576, 580
(1997). The court is limited to the facts alleged in the complaint.Waters v. Autuori, 236 Conn. 820, 825-26 (1996). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (internal citation omitted)Pamela B. v. Ment, 244 Conn. 296, 308 (1998). The moving party has the burden of proving each claimed insufficiency in the pleading and of providing the court the legal authority upon which the motion relies.Connecticut Practice Book, Sections 10-41 and 10-42.
Count One
CT Page 10630
This count alleges the defendant subjected the plaintiff to discriminatory employment practices in violation of C.G.S. §§ 46a-60
(a)(9) and (a)(1) by imposing upon her terms and conditions of employment different from and less favorable than those imposed upon Ball. It alleges the discrimination was based on marital status and/or familial responsibilities (Paragraph 26). The defendant claims the plaintiff has failed to state a claim under the statutes alleged. C.G.S. § 46a-60
(a)(1) states in relevant part, "It shall be a discriminatory practice . . . [f]or an employer . . . except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex, marital status. . . ." C.G.S. § 46a-60 (a)(9) makes it a discriminatory practice "[for an employer . . . to request or require information from an employee . . . relating to . . . the individual's familial responsibilities." The defendant's position is that there can be no violation of § 46a-60 (a)(9) because there is no allegation the employer either "requested or required" information from the plaintiff relating to her "familial responsibilities." The defendant correctly points out that, in assessing a discrimination claim under C.G.S. § 46a-60, it is appropriate to look to federal case law interpreting Title VII of the Civil Rights Act of 1964 for guidance since that Act is the federal statutory counterpart to our statute. Brittel v. Department of Correction, 247 Conn. 148, 164
(1998). "Nevertheless, we have also recognized that, under certain circumstances, federal law defines the beginning and not the end of our approach of the subject." State v. Comm. on Human Rights andOpportunities, 211 Conn. 464, 470 (1998). Under both federal and state law, to establish a prima facie case of discrimination, the plaintiff must show: (1) she was a member of a protected group; (2) she was qualified for the job; (3) she suffered an adverse employment decision; and (4) the adverse employment decision occurred under circumstances giving rise to a reasonable inference of discrimination. Texas Dept. ofCommunity Affairs v. Burdine, 450 U.S. 248, 253-54 (1981); Yancey v.Allstate Insurance Company, Superior Court, judicial district of Hartford at Hartford, Docket No. 573357 (November 2, 1999) (Peck, J.). Defendant argues the plaintiff has failed to state facts showing her termination was under circumstances giving rise to a reasonable inference of discrimination based on marital status and/or familial responsibilities under either § 46a-60 (a)(1) or (9) because "familial responsibilities" — as that term is used in § 46a-60 (a)(9) — does not define or identify any of the protected groups enumerated in § 46a-60 (a)(1). "Marital status" is one of those protected groups though not there defined. The defendant urges upon the court the definition of that term enunciated in Blackwell v. DanburyCT Page 10631Hospital, 1996 Conn. Super. LEXIS 1613, Superior Court, judicial district of Danbury, Docket No. 321561 (June 26, 1996) (Moraghan, J.). "Marital status" was there defined as "the condition of being single, married, separated, divorced or widowed." The issue in Blackwell, supra, was not whether "familial responsibilities" was an indicator of "marital status" — or any other protected group listed in § 46a-60 (a)(1) — but rather whether a component — or indicator — of "marital status" was the identity of one's spouse. Judge Moraghan concluded the marital status of a married person was "married" and that the identity of that person's spouse did not alter that status. Thus, he rightly reasoned the plaintiff before him — who claimed she was refused employment for reason of her spouse's identity — was not discriminated against in violation of § 46a-60 (a)(1). To conclude in the case at bar, however, that "familial responsibilities" is not an indicator of "marital status" is to conclude the fact one has "familial responsibilities" cannot be viewed as an indicator of whether that person is, in the words of the Blackwell court, "single, married, separated, divorced or widowed." The defendant offers no authority for that proposition. While it is of course so that parental or familial responsibilities are not conclusive of one's marital status, it is more often than not an indicator of such status in our society. The legislative purpose in enacting C.G.S. § 46a-60 was to eliminate discrimination against women on the basis of such considerations as sex, marital status, and reproductive potential when those same considerations posed no similar threat of discrimination against men. See Legislative History, 1981 General Assembly, Senate Bill 3509 (May 14, 1981). It is not inconsistent with that purpose to associate the exercise of parental responsibilities with marital status. This conclusion also recognizes that principle of statutory construction which requires all parts of a statute be read as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation. Sweetmanv. State Elections Enforcement Commission, 249 Conn. 296, 307 (1999). The court rejects the defendant's argument that, because "familial responsibilities" is not specifically enumerated as a protected class in § 46a-60 (a)(1), the plaintiff has failed to state a claim under the statute. Since § 46a-60 (a)(9) can be reconciled with § 46a-60
(a)(1) so as to give effect to the legislative intent and provide an interpretation which is reasonable and harmonious, this court views § 46a-60 (a)(9) as complementary to § 46a-60 (a)(1) and "familial responsibilities" as a common indicator of marital status" and/or "sex" — both of which are protected classes under § 46a-60 (a)(1).
The plaintiff, however, goes no further than to conclude Count One states a claim once these two sections of the statute may be reconciled. She ignores entirely that the inquiry cannot end there since she must assert her membership in the protected class. She cannot, as here, state CT Page 10632 simply that she was treated badly because Ball had obligations to children that the plaintiff didn't have but must also allege those familial responsibilities — or lack thereof — were a component of — or occasioned by — her marital status or sex. It is on this basis the plaintiff's claim under § 46a-60 (a)(1) must fail since she doesn't claim to be the recipient of disparate treatment because she was either single or female. Ball was also single and female. It is so that the employer's alleged discriminatory practices were not directed to the plaintiff for reason of the plaintiff's membership in a protected class nor does the plaintiff so allege. She was not fired because she was unmarried or a woman. Under both federal law and this state's anti-discrimination statute, she must allege she was the victim of employment discrimination because she belonged to a class of persons who, for reasons of marital Status and/or sex,[1] the statute was intended to protect. To conclude it is sufficient to state a claim to allege only that she lacked responsibilities to family (here, children) when Ball had them without also asserting the statute was designed to afford her protection because of her marital status or sex ignores that the lynchpin of C.G.S. § 46a-60 is membership in a protected class as enumerated in § 46a-60 (a)(1) and is contrary to the well-established rule of construction that all parts of a statute are to be interpreted so as to be a harmonious whole. It also contravenes the plaintiff's considerable efforts to reconcile § 46a-60 (a)(1) and (a)(9).
The defendant's argument there can be no claim of discrimination under § 46-60 (a)(9) because this employer is not alleged to have "requested or required" information from the plaintiff regarding familial responsibilities is troubling. When words of a statute are clear, the court must follow the statute as its language directs. Cooper v. DeltaChi Housing Corp. of Connecticut, 41 Conn. App. 61, 65 (1996). The court seeks the intent of the legislature not in what it meant to say but in what it did say. Keeney v. Fairfield Resources, Inc., 41 Conn. App. 120,132 (1996). The mischief presented here, however, is that the application of this cannon of statutory construction leads to the ineluctable conclusion that an employer who does not directly inquire into familial responsibilities cannot be held liable even if it used — to the disadvantage of the employee — that same information acquired from another source. That conclusion would thwart the intent of the legislature. "[T]he intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute." Sweetman, supra, at 307 (citation omitted). Statutes are to be construed in a manner that will not thwart [their] intended purpose or lead to absurd results. Id. In view of this court's determination, however, that the plaintiff is not a member of any of the protected classes created by the legislature, this court leaves CT Page 10633 for another day the apparent conundrum presented by the language of § 46a-60 (a)(9) and the factual allegations of this complaint.
The motion to strike Count One is granted.
Count Two
In paragraph 26 of the Second Count, the plaintiff alleges she was terminated in retaliation for her opposition to the defendant's alleged discriminatory practices in violation of C.G.S. § 46a-60 (a)(4). The defendant asserts the plaintiff's failure to state a claim. Having determined with regard to Count One that any discriminatory practice alleged did not occur as a result of the plaintiff's protected status, the court grants the motion to strike Count Two.
Count Three
Here, the plaintiff alleges a claim for sexual harassment. The defendant has moved to strike this count and alleges the plaintiff has failed to allege sufficient facts to support that claim.
Count Three alleges that, during her employment, most of the defendant's employees were young, unmarried females (Paragraph 9) and that, while she was employed there, the defendant also employed one "Jim" to perform various functions, some of which were accomplished at the job site (Paragraph 10). It alleges Jim made unwelcome sexual advances and engaged in conduct of a sexual nature toward the female employees (Paragraphs 18-20). Specifically, the plaintiff asserts Jim was always seeking opportunities to bother the female employees — to include her — in a sexual manner (Paragraph 11), made sexually oriented comments to the plaintiff and other female employees (Paragraph 12), attempted to and did get physically close to the plaintiff and other female employees in offensive, inappropriate, and intimidating ways that made them uncomfortable in the workplace (Paragraph 12), and that, upon information and belief, Jim had actually been fired by the defendant one or more times for sexually harassing the defendant's female employees but that Jeanne Toomey, the defendant's Director, had thereafter permitted him to be at the worksite (Paragraph 13). It is additionally alleged Toomey was fully aware of all of the above yet allowed him to work on the premises when the plaintiff and other female employees were also present (Paragraph 14) and that Toomey had actually warned the females to stay away from Jim and not to be alone with him anywhere (Paragraph 15). The plaintiff alleged Jim's behavior constituted unwelcome sexual advances and conduct of a sexual nature in violation of C.G.S. § 46a-60 (a)(8) and that his conduct, together with Toomey's knowledge, acquiescence, and failure to prevent the same, constituted harassment of the plaintiff on CT Page 10634 the basis of her sex and sexual harassment of her by the defendant in that such conduct had the purpose or effect of substantially interfering with her performance or creating an intimidating, hostile, or offensive work environment (Paragraphs 18 and 19). In Paragraph 20 of that count, she asserted that sexual harassment by the defendant was a discriminatory employment practice in violation of § 46a-60 of our statutes.
Under § 46a-60 (a)(8), it shall be a discriminatory practice:
 [f]or an employer . . . to harass any employee . . . on the basis of sex. "Sexual harassment" shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment. . . .
Sexual harassment is "discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." MeritorFSB Savings Bank v. Vinson, 477 u.s. 57, 65, 67 (1986). It must be "severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive." Harris v. Forklift Systems, Inc., 510 U.S. 17,21 (1993). Simply speaking an epithet which offends an employee is not sufficient. See Meritor, supra, at 67. An employer is not liable unless he either provides no reasonable means for employee complaint or knew of the harassment but did nothing about it. See Kotcher v. Rosa and SullivanAppliance Center, Inc., 957 F.2d 59, 63 (2d. Cir. 1992).
The defendant's claim the plaintiff does not allege sufficient facts to support a finding of liability against the defendant is unpersuasive. Toomey need not have witnessed the alleged misconduct nor was there a need for others to complain to her about Jim's behavior. In point of fact, since it is alleged employees knew Toomey was aware of his history of sexual harassment and his propensity for conduct of a sexual nature but did nothing to prevent him from coming to this workplace, there was no need for her to witness the specific incidents since it is claimed they occurred with her "full knowledge and acquiescence." See Paragraph CT Page 10635 19 of Substituted Complaint. In this regard, it is entirely relevant that the plaintiff alleged Toomey had "warned" female employees to stay away from Jim and never to be alone with him. If that is believed, the defendant had actual knowledge. Making sexually orientated comments to the plaintiff and other female employees, attempting to and getting "physically close" to them in "offensive, inappropriate and intimidating ways," and "always seeking opportunities to bother female employees in a sexual manner" (Paragraphs 11 and 12) are sufficient allegations of specific facts to support the claim stated and to permit a jury finding such conduct was sufficiently severe or pervasive enough to create a hostile work environment within the meaning of the statute.
The motion to strike Count Three is denied.
Count Four
This count alleges the plaintiff was wrongfully discharged. It is premised upon the allegation the defendant told her she was being terminated for violation of a "rule" that prohibits employees from being at the workplace when not scheduled to work (The plaintiff was on vacation when she went to the defendant employer's premises.). Specifically, the plaintiff alleges a violation of Sections 31-236-26 (2) and 31-236-26b of the Regulations of Connecticut State Agencies.
§ 31-236-26 (2) prescribes it shall be wilful misconduct if an employee commits "a single knowing violation of a reasonable and uniformly enforced rule or policy of the employer" provided that violation is not a result of the employee's incompetence. § 31-236-26b
provides an employee can be discharged for a knowing violation of a reasonable and uniformly enforced employer rule or policy if:
 a) the employee knew or should have known of the rule because it was effectively communicated and the employee's conduct violated the particular rule and
the individual was aware he was engaged in such conduct and if the rule required an intentional act, there is inquiry into the individual's intent to violate that rule;
 b) the employer rule is reasonable in that it furthers the employer's lawful business interest;
 c) the employer's rule is uniformly enforced — specifically, that similarly situated employees subject to the workplace rule are treated in a similar manner when the rule is violated; and CT Page 10636
 d) the rule was reasonably applied — that is, the adverse personnel action taken by the employer is appropriate in light of the rule and the employer's lawful business interest.
The defendant's motion to strike this count is based solely upon the argument the plaintiff has not asserted any violation of public policy since the Regulations of the Connecticut State Agencies do not constitute public policy statements but are instead merely guidelines provided the Department of Labor in its determination whether an employee has engaged in wilful misconduct so as to justify the denial of unemployment compensation benefits. In Connecticut, there is a tort cause of action for wrongful discharge by an employee at — will if discharged for a reason that violates public policy. Sheets v. Teddy's Frosted Foods,Inc., 179 Conn. 471, 472 (1980). The defendant offers no legal authority for the proposition that Connecticut labor laws are not expressions of public policy or for the proposition the principles set forth in the Regulations cannot constitute a violation of public policy sufficient to support a cause of action for wrongful discharge. The defendant's argument that construing the Regulations as public policy "contravenes the doctrine of at — will employment adopted in Connecticut"[2]
misses the mark because it sidesteps the very issue raised by the employer and ignores that the wrongful discharge tort remedy was specifically created to provide a remedy to discharged employees for whom no contract remedy was available under the traditional rule of at — will employment. See, e.g., Atkins v. Bridgeport Hydraulic Co.,5 Conn. App. 643, 648 (1985). In fact, our Supreme Court has recently concluded "public policy" can be articulated in regulations of this state's department of correction. In State of Connecticut v. AFSCME,Council 4, Local 387, AFL-CIO, 250 Conn. 467 (2000), the Court upheld the trial court's vacating of an arbitration award and determined that a union member's placing of an anonymous, obscene and racist telephone call to a state legislator from a phone within a correctional facility while that union member was on duty was a violation of public policy because the conduct was violative of C.G.S. § 53a-183 (a), which defines the crime of harassment in the second degree by telephone, and the correction department's employment regulations. Id. at 478.[3] Thus, to nakedly argue — without authority — this state's labor regulations cannot be the basis for public policy expressions is insufficient particularly where, as here, the plaintiff asserts no such "rule" prohibiting employee visits to the workplace when employees are on vacation or otherwise not scheduled to work had ever been communicated to this plaintiff or to other employees, that it was a common practice for employees to stop by the premises for various purposes on their days off, that no such "rule" existed, and that the plaintiff could therefore CT Page 10637 not have knowingly violated the rule nor did she intend to violate it, and, that, had such rule existed, it would not have been reasonable and was not reasonably applied or uniformly enforced (Paragraphs 20 and 29 of Count Four).
The motion to strike Count Four is denied.
Counts Five and Six
Count Five re-alleges the allegations of Count Four and asserts the plaintiff was wrongfully discharged because her termination was in fact retaliation for her participation in activities opposed to the defendant's discriminatory employment practices including but not limited to a so-called "meeting" alleged to have occurred at the workplace on the discharge date. Specifically, it is alleged this plaintiff and her sister, the plaintiff in the companion case, went to the work site in response to numerous telephone calls from co-employees who were at work, needed information regarding the administration of medication to animals in the defendant's care, and who were unable to get such information from Ball who, unlike the plaintiff and her sister, was not on vacation but at work that week (Paragraphs 16 and 17). While there, the co-employees, in the presence of Ball, discussed with the plaintiff and her sister employment issues to include the Director's "favoritism toward Ms. Ball." (Paragraph 18) Later that day, the Director terminated the plaintiff for insubordination (Paragraph 25).
Count Six re-alleges the first twenty-nine (29) paragraphs of Count Four and asserts the plaintiff's discharge was in breach of an implied covenant of her employment contract which required the defendant to act in good faith and deal fairly with the plaintiff with respect to the performance and enforcement of that contract — this in violation of public policy as embodied in C.G.S. § 46a-60 and Sections 31-236-26
(2) and 31-236-26b of the Regulations of Connecticut State Agencies.
The defendant has alleged the plaintiff's failure to assert sufficient facts to support a claim either for wrongful discharge or breach of the implied covenant of good faith and fair dealing. The sole argument advanced is that, since C.G.S. § 46a-60 (a) provides an adequate statutory remedy, the plaintiff is not permitted to bring these additional common law claims. The employer cites Atkins, supra, and numerous trial court decisions in support of that claim.[4] It is not enough, however, simply to claim there is another statutory remedy available if that remedy is in fact unavailable to the plaintiff. Here, the claim is that § 46a-60 (a), the same anti-discrimination statute the defendant earlier claimed — and this court has found — provided no remedy to this plaintiff because not a member of a protected CT Page 10638 class under § 46a-60 (a)( 1), is the available statutory remedy." That is the only remedy the defendant asserts regarding Count Five's wrongful discharge claim and it is relevant that this plaintiff pursued her administrative remedies with the Connecticut Human Rights and Opportunities Commission (CHRO) and has received a release of jurisdiction from that commission pursuant to C.G.S. § 46a-100. See Paragraphs 6 and 7 of the First Count incorporated by reference into the Fifth Count. With regard to Count Six, the defendant does not identify an "adequate statutory remedy" and cannot therefore claim the benefit of the cases to which it cites. A motion to strike raising any claim of legal insufficiency shall separately set forth each such claim and shall distinctly specify the reason(s) for each such insufficiency. The moving party has the burden of proving each claimed insufficiency in the pleading and of providing the court the legal authority upon which the motion relies. Practice Book §§ 10-41 and 10-42 (a); Board of Education v.Dow Chemical Co., 40 Conn. Sup. 141, 142 (1984). The defendant has failed to meet that burden.
To maintain an action for breach of the implied covenant of good faith and fair dealing, the termination must have been for a reason which violates public policy. This plaintiff's allegations her termination violated public policy as expressed in this state's labor regulations are sufficient to state such a claim. The merit of such claims is not for this court to here decide but must be left to the trier of fact in a later proceeding.
The motion to strike Counts Five and Six are denied.
Count Seven
This count alleges negligent infliction of emotional distress. It incorporates those allegations of Counts One and Two that alleged this plaintiff was required to work overtime while Ball was not, that she was required to make up time lost from work if she occasionally was required to leave work early while Ball was not required to do so, that she was discouraged by the defendant to take off sick days while Ball was not, that she was required to attend employer functions while Ball was not, that the plaintiff was told she had to "be nice" to Ball because she was a single parent, and that the defendant's Director (Toomey) admitted to the plaintiff she (the Director) had been favoring Ball and apologized for it though she did not change her employment practices (Paragraphs 11-14). It incorporated the allegation of Count Two that alleged her discharge was in retaliation for the plaintiff's opposition to the defendant's discriminatory employment practices (Paragraph 26). It incorporated all of the allegations of sexual harassment alleged in paragraphs 1-20 of Count Three. It incorporated all of the allegations of CT Page 10639 wrongful discharge and breach of the implied covenant of good faith and fair dealing as asserted in Counts Four through Six. The plaintiff claims, in Count Seven, the defendant knew or, in the exercise of reasonable care, should have known the defendant's treatment of the plaintiff involved an unreasonable risk of causing emotional distress and that such distress, if caused, could result in bodily harm or illness to the plaintiff (Paragraph 2) and, as a proximate cause of the defendant's failure to exercise reasonable care, the plaintiff has suffered and continues to suffer severe emotional distress, humiliation, and embarrassment (Paragraph 3).
The defendant claims the plaintiff has failed to allege facts sufficient to support a claim for negligent infliction of emotional distress. In doing so, the defendant addresses only the termination process. If the plaintiff's claim in Count Seven were solely that her discharge caused her emotional distress, the defendant's motion would surely prevail since, in this case, the firing was accomplished in a single private telephone conversation that presumably was not extended and which apparently did not consist of name-calling or other personally denigrating comments directed to the plaintiff. The act of termination — even if wrongful — is not by itself sufficient to sustain this claim. Parsons v. United Technologies Corp., 243 Conn. 66, 88-89
(1997). The defendant cites to a trial court decision in which the plaintiff, who alleged various causes of action, rested his claim for negligent infliction of emotional distress solely upon his termination. In Skierkowski v. Creative Graphics Services, Inc., 1995 Conn. Super. LEXIS 1374, judicial district of Hartford-New Britain (May 5, 1995), Judge Handy denied the motion to strike because the plaintiff there alleged more than that he was discharged but that he had also been led to believe his job was secure, he relied on representations his employer had earlier made to him, and, when terminated, it was in the presence of two co-employees. Id. at p. 25. Considering all of the plaintiff's allegations, she concluded his claim should stand because he alleged the "defendant should have realized that its conduct involved an unreasonable risk of causing such emotional distress which might result in illness or bodily injury "and that the actual termination was "done in an inconsiderate, humiliating, or embarrassing manner (internal citations omitted)." Id. The plaintiff in the instant case alleged the necessary elements in Paragraph 2 of Count Seven. To be sure, there is no allegation, as there was in Skierkowski, the termination was done in a particularly humiliating fashion but that is so because this plaintiff does not rest her claim solely upon the firing and the defendant ignores this critical distinction. This plaintiff alleges that the defendant's failure to exercise reasonable care given the totality of all of the circumstances alleged in earlier counts and re-alleged and incorporated by reference in this count was such as to cause her "severe emotional CT Page 10640 distress, embarrassment and humiliation (Paragraph 3).[5]
"The principal function of Practice Book § 10-42 is to enable movement beyond the allegations in the pleadings and to assist the court in its analysis of the evidence so as to ascertain whether an actual need for trial exists." Hughes v. Bemer, 200 Conn. 400, 402 (1986). The facts alleged in the case before the court are sufficient to support a claim for negligent infliction of emotional distress and present an issue of fact to be determined in another forum.
The motion to strike Count Seven is denied.
Count Nine
This count alleges a breach of contract claim. Incorporating the allegations of preceding counts, it asserts the plaintiff had a contract of employment and was required to be on the premises from 7:00 a.m. until 4:00 p.m. (a total of nine hours) to include her lunch period. It further asserts she was required, during the lunch period, to be available to answer the telephone and greet visitors but was not paid for the lunch hour; thus, she (and her co-employees) were paid for only eight hours per day. She claims the defendant's failure and refusal to pay wages for the lunch hour was arbitrary, unreasonable and in bad faith and constitutes a breach of the employment contract between the parties.[6]
The defendant has moved to strike this count for the plaintiff's failure to allege facts sufficient to support the claim.
It first claims the plaintiff cannot bring a breach of contract claim because C.G.S. § 31-72 affords her an adequate statutory remedy. That statute addresses civil actions by employees for wages due and permits the employee to recover twice the full amount of the unpaid wages, costs, and reasonable attorney's fees. The defendant cites toAtkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643 (1985), which held an employee discharged in violation of public policy may not bring a common law action in tort or contract when there is an adequate statutory remedy available. Atkins relied upon the language of Wehr v. BurroughsCorp., 438 F. Sup. 1052 (USDC, E.D. Pa.) (1977), which made clear the underlying rationale of recognizing the public policy exception to at-will cases is the protection of certain strong community policies, which policies are sufficiently served if in fact the employee has a statutory remedy to enforce those same considerations. The plaintiff's response is that she does not here "allege" she was terminated in violation of public policy but instead asserts a simple breach of contract claim for non-payment of wages. Thus, she argues Atkins is not applicable. Regardless, however, of the nomenclature the plaintiff has CT Page 10641 chosen to characterize her claims, she cannot escape the conclusion that all claims asserted in this action arise from her termination which she claims was wrongful because violative of certain public policies. It also ignores that Atkins has been given an expansive reading; it prohibits all common law actions — whether in tort or contract — where an adequate statutory remedy is available. Finally, the plaintiff re-asserts in this count paragraph 33 of Count Eight; in that paragraph she makes a claim for wages under C.G.S. § 31-71 (which, unlike § 31-72, does not permit recovery of twice the full amount of unpaid wages with costs and reasonable attorney's fees). The payment of wages in consideration of an employee's labor is in fact a deeply held public policy consideration. This employee has an adequate statutory remedy for all claims for wages in C.G.S. § 31-72 and the defendant's motion to strike Count Nine is therefore granted.[7]
Paragraph 35 of Count Eight and Paragraph 6 of The Claim For Relief
The request in each instance is for twice the amount of wages owed plus costs and attorney's fees. The defendant has moved to strike on the basis the Substituted Complaint fails to allege sufficient supporting facts.
Where a single paragraph attempts therein to state a cause of action, a motion to strike may be used to attack its legal sufficiency. See, e.g.,Zamstein v. Marvasti, 240 Conn. 549, 553 (1997); Zimmerman v. ConnecticutCollege, Superior Court, judicial district of New London, Docket No. 544623 (July 2, 1998, Handy, J.); Bombard v. Industry Riggers, Superior Court, judicial district of Waterbury, Docket No. 140181 (January 5, 1998, Pellegrino, J.). Practice Book § 10-39 allows for a claim for relief to be stricken only if the relief sought could not be legally awarded. Pamela B. v. Ment, 244 Conn. 296, 325 (1998).
Case law interpreting C.G.S. § 31-72 has held the recovery of double wages and attorney's fees requires a showing of bad faith, arbitrariness, or unreasonableness. See Sansone v. Clifford, 219 Conn. 217
(1991); Matteson v. Great Eastern Dev., Ltd., 18 Conn. App. 618 (1989);D'Aguila, supra, at 17-18. Paragraph 34 of Count Eight alleges the failure to pay the legally owed wages was "arbitrary, unreasonable and in bad faith." In support of that claim, the plaintiff alleges the defendant required her to be on the premises during lunch hours to answer the telephone and greet visitors (Paragraph 26 of Count Eight) and that, although she "worked" nine hours daily, she was paid for only eight of those hours (Paragraph 27).
The motion to strike Paragraph 35 of Count Eight and Paragraph 6 of the Claim for Relief is denied. CT Page 10642
Paragraph 4 of the Claim For Relief
This paragraph claims punitive damages. The defendant claims the failure to set forth sufficient facts to justify that request.
Punitive damages, unless authorized by statute, may only be awarded for outrageous conduct. Ames v. Sears, Roebuck Co., 8 Conn. App. 642, 655
(1986). They are to be awarded "when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of these rights." Collens v. New Canaan Water Co., 155 Conn. 477,489 (1967). Though the defendant cites to Dunn v. Actmedia, Inc.,
1998 Conn. Super. LEXIS 3522, judicial district of Stamford/Norwalk at Stamford, Docket No. 0163913 (December 14, 1998, Lewis, J.) and claims that trial court granted a motion to strike this prayer for relief where there were not specific allegations of reckless indifference to the rights of others or an intentional and wanton violation of those rights, that is a mis-statement. Nowhere in Dunn is there a discussion of punitive damages; there is not even the suggestion of punitive damages or the need specifically to plead the recited language.[8]
What is necessarily implied need not be specifically alleged. PamelaB. v. Ment, 244 Conn. 296, 308 (1998). The plaintiff alleges she was wrongfully discharged in violation of public policy, that she was told she was fired for violation of a "rule" she claims never existed, that the defendant's claim the plaintiff was fired for insubordination was an outright lie, that she was caused emotional distress by reason of the defendant's preferential treatment of another employee, that she was subjected to terms and conditions of employment not imposed upon the other employees, that she was prohibited from leaving the premises during her lunch hour and was required instead to perform employment duties for which she was not paid, etc. There are sufficient facts pleaded to permit a jury finding this employer's conduct was outrageous and sufficiently indifferent to the plaintiff's rights as to be reckless and wanton. The intent of an actor is appropriately a determination for the trier of fact.
The motion to strike the requested relief of punitive damages is denied.
Conclusion
The defendant's motion to strike Counts One, Two, and Nine is granted. It is denied as to Counts Three, Four, Five, Six, and Seven and as to Paragraph 35 of Count Eight[9] and Paragraphs 4 and 6 of the Claim for Relief.
Sheedy, J. CT Page 10643