STATE OF CONNECTICUT *v.* DUDLEY HALL
(AC 23045)

Foti, McLachlan and Freedman, Js.

Argued January 12—officially released April 13, 2004

*Richard T. Meehan, Jr.*, with whom, on the brief, was *Christopher Duby*, certified legal intern, for the appellant (defendant).

*Melissa L. Streeto*, deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *John R. Whalen*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Dudley Hall, a physician, appeals from the judgment of the trial court, rendered after a jury trial, convicting him of twenty-two counts of illegally prescribing a narcotic substance in violation

of General Statutes § 21a-278 (b) and fourteen counts of illegally prescribing a controlled substance in violation of General Statutes § 21a-277 (b). On appeal, the defendant claims that the court improperly (1) admitted evidence, (2) concluded that General Statutes § 21a-252 (a) was not unconstitutionally void for vagueness and (3) allowed an expert to testify as to an ultimate issue in the case. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. In the court's memorandum of decision denying the defendant's motions in arrest of the judgment and for a new trial, the court stated: "The [defendant's] arrest arose from an undercover operation led by the health and social services fraud bureau within the office of the chief state's attorney. The investigation began sometime in May, 2000, and included agents from the state department of consumer protection, drug control division, and the United States Drug Enforcement Administration. Working in conjunction with these agencies, the lead investigator ultimately secured the aid of [the defendant's] receptionist and initiated a series of 'undercover patient' visits. It was at these visits where information was gathered concerning the prescription practice . . . of [the defendant]. Over a four week time span and after sixteen (16) separate visits by four (4) different undercover officers, thirty-six (36) prescriptions for a variety of narcotic and controlled substances were issued by the defendant to the officers."

On July 17, 2001, the defendant was arrested and charged with twenty-two counts of illegally prescribing a narcotic substance in violation of § 21a-278 and fourteen counts of illegally prescribing a controlled substance in violation of § 21a-277. The jury returned a guilty verdict on each of the thirty-six counts. The defendant was then sentenced to five years incarceration, execution suspended after one year, and five years of

probation with special conditions. This appealed followed. Additional facts and procedural history relevant to the defendant's claims will be set forth as necessary.

I

The defendant first claims that the court improperly admitted into evidence thirteen boxes of prescription pads containing 44,000 blank prescription forms that authorities had seized from him pursuant to a search warrant. Specifically, the defendant claims that the pads of prescription forms had a tendency to excite the passions and influence the judgment of the jury, and that they suggested a criminal propensity on his part. We do not agree.

We begin by setting forth our standard of review. "We have held generally that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *Urich* v. *Fish*, 261 Conn. 575, 580, 804 A.2d 795 (2002). Furthermore, because the claimed error is not constitutional in nature, the defendant bears the burden of demonstrating that it was harmful. See *State* v. *John G.*, 80 Conn. App. 714, 731, 837 A.2d 829 (2004).

Here, we need not decide if the thirteen boxes of blank prescription forms were admitted into evidence improperly because even if we assume arguendo that the ruling was improper, it was harmless error. For an error to be harmful, the defendant must show that it is more probable than not that the court's erroneous action affected the result of the proceeding. See *State* v. *Breton*, 264 Conn. 327, 364, 824 A.2d 778, cert. denied, 540 U.S. 1055, 124 S. Ct. 819, 157 L. Ed. 2d 708 (2003). The defendant has not met his burden.

The defendant argues in his brief that the forms "had a tendency to excite the passions and influence the judgment of the jury" and implicated "criminal propensity." That argument, however, is without merit because any prejudice resulting from the admission of the evidence was minimal and did not make it more probable than not that the result of the trial was affected. Furthermore, the evidence supporting the defendant's conviction was so overwhelming that we cannot say that any prejudice resulting from the admission of the prescription forms was substantial.

We cannot conclude that the thirteen boxes of pads of prescription forms were the type of evidence that could excite the passions of the jury or implicate criminal propensity as could, for example, a gun, ski mask, rope or ammunition, as found in the cases cited by the defendant in support of his claim of harmful error. See, e.g., *State* v. *Acklin*, 171 Conn. 105, 114–16, 368 A.2d 212 (1976); *State* v. *Ferraro*, 160 Conn. 42, 44–46, 273 A.2d 694 (1970). We also note that the legitimate and obvious reasons for a physician to possess blank prescription forms minimize any prejudice that would possibly result. Finally, the jury was presented with substantial evidence, from four undercover police officers, with regard to the defendant's illegal prescription of drugs. All four of the officers posed as patients of the defendant and provided similar testimony about how the defendant would write various prescriptions for drugs such as OxyContin, Xanax and Percocet, with little or no question or comment, and without performing a physical examination of the purported patient.

In light of that evidence, we cannot conclude that it was more probable than not that the admission of the thirteen boxes of blank prescription forms affected the trial's result. Because the error, if any, was harmless, the defendant cannot prevail on his claim that the court

improperly admitted the thirteen boxes of blank prescription forms.

## II

The defendant next claims that the court improperly denied his amended motion to dismiss, his posttrial motion in arrest of the judgment and his amended posttrial motion for a new trial. Specifically, under each of those claims, the defendant argues that § 21a-252 (a)[1] is unconstitutionally void for vagueness in that it fails to define adequately the circumstances under which a physician may prescribe narcotic and controlled substances.[2] We do not agree. Because the defendant makes the same constitutional challenge under each of those claims, we will address the claims jointly.

The following additional facts and procedural history are relevant to the defendant's claims. On February 19, 2002, the defendant filed an amended motion to dismiss, claiming that § 21a-252 (a) is unconstitutionally vague as it applies to §§ 21a-277 (b) and 21a-278 (b). The court heard argument on the motion and denied it on February 22, 2002. On May 10, 2002, following his conviction, the defendant filed an amended motion for a new trial and a motion in arrest of the judgment in which he renewed his argument that § 21a-252 (a) was unconstitutionally void for vagueness as it applied to him. The court denied both motions and, on September 10, 2002, issued a memorandum of decision setting forth its reasoning. The court concluded that as applied to the particular facts of this case, § 21a-252 (a) "clearly sets forth the standards a physician must adhere to in

---

[1] General Statutes § 21a-252 (a) provides in relevant part that a "physician, in good faith and in the course of the physician's professional practice only, may prescribe, administer and dispense controlled substances . . . for demonstrable physical or mental disorders . . . ."

[2] The defendant argues that if § 21a-252 (a) were held to be unconstitutional, there would be no exception under §§ 21a-277 (b) and 21a-278 (b) that would permit licensed physicians to prescribe medications.

prescribing narcotic and/or controlled substances" and is " 'sufficiently definite' to enable a person of common intelligence to know what conduct is prohibited."

On appeal, the defendant again challenges the constitutionality of § 21a-252 (a), claiming that it is void for vagueness. Specifically, the defendant argues that the statute is vague because the use of the word "and," rather than "or," in § 21a-252 (a), which provides in relevant part that a physician may "prescribe, administer and dispense" controlled substances in accordance with law, necessitates the conclusion that the defendant had to do all three acts—prescribe, administer *and* dispense—and not merely prescribe, to come within the limited circumstances of § 21a-252 (a) in which a physician may legally prescribe controlled substances and thereby avoid liability under §§ 21a-278 (b) and 21a-277 (b). We do not agree.

"In our assessment of whether the statute passes constitutional muster, we proceed from the well recognized jurisprudential principle that [t]he party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality. . . . The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . Thus, [i]n order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. . . . Furthermore, [i]f the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving

the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citations omitted; internal quotation marks omitted.) *State* v. *Jason B.*, 248 Conn. 543, 556, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999).

The defendant's claim requires this court to interpret § 21a-252 (a). "According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature." (Internal quotation marks omitted.) *Regency Savings Bank* v. *Westmark Partners*, 70 Conn. App. 341, 345, 798 A.2d 476 (2002). Furthermore, "[i]t is basic that common sense must be used in statutory construction and that [a] statute should not be interpreted in any way to thwart its purpose . . . [or so as to lead] to absurd consequences and bizarre results." (Internal quotation marks omitted.) *Keeney* v. *Fairfield Resources, Inc.*, 41 Conn. App. 120, 132, 674 A.2d 1349 (1996).

Here, the defendant's interpretation of the statute would lead to "absurd consequences and bizarre results." (Internal quotation marks omitted.) Id. If we read § 21a-252 (a) as the defendant suggests and require that a physician must prescribe, administer *and* dispense, every physician who prescribes medication, yet is not responsible for dispensing or administering it, would not come within the exception provided by § 21a-252 (a), permitting a physician to prescribe medication under limited circumstances, and would be guilty under §§ 21a-277 (b) or 21a-278 (b). Such an interpretation clearly was not within the legislature's intent. Consequently, we agree with the trial court that "the use of the conjunctive 'and' is merely to enumerate those acts in which a physician may engage in the course of the physician's medical practice. There is nothing mandatory in the language to suggest that a physician neces-

sarily must combine all three acts in each instance of prescription practice." Because the defendant's interpretation of the term "and" would lead to such an illogical result, we conclude that he has not met his heavy burden of proving that § 21a-252 (a) is unconstitutionally void for vagueness beyond a reasonable doubt.[3] The court, therefore, did not act improperly in denying the defendant's amended motion to dismiss, his posttrial motion in arrest of the judgment and his amended posttrial motion for a new trial.

## III

Last, the defendant claims that the court improperly allowed the state's expert witness, Michael Robbins, a physician, to opine as to an ultimate issue in the case. Specifically, the defendant argues that the court improperly allowed Robbins to give his personal opinion on an ultimate issue of fact by responding to hypothetical questions. We do not agree.

We begin by setting forth our standard of review. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *State* v. *Wargo*, 255 Conn. 113, 123, 763 A.2d 1 (2000).

---

[3] The defendant also argues that the phrases "good faith," "in the course of the physician's professional practice only" and "for demonstrable physical or mental disorders" in § 21a-252 (a) are unconstitutionally void for vagueness. With respect to that claim, and in light of the defendant's heavy burden of proving the statute's unconstitutionality beyond a reasonable doubt, we agree with the trial court that the phrases are sufficiently definite to enable a person of common intelligence to know what conduct is prohibited. Additionally, the defendant argues that § 21a-252 (a) does not contain an appropriate mens rea or scienter requirement as is required of criminal statutes, but rather contains a good faith requirement. That argument is without merit because § 21a-252 (a) is not a criminal statute, but rather a statute creating an exception to criminal liability.

"An expert witness ordinarily may not express an opinion on an ultimate issue of fact, which must be decided by the trier of fact. . . . An expert may, however, give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Whitley*, 53 Conn. App. 414, 421, 730 A.2d 1212 (1999); see also Conn. Code Evid. § 7-3.

Here, the defendant argues that Robbins responded to hypothetical questions mirroring the facts at issue, which implicitly criticized the defendant's medical determinations and implied that he lacked the requisite medical reasons for issuing the prescriptions. Even if we assume arguendo that Robbins' testimony pertained to an ultimate issue, it was necessary to assist the jury in deciding the issue. See Conn. Code Evid. § 7-3 (a). Robbins' testimony regarding prescription practices and procedures, which was elicited through the use of hypothetical questions, was necessary for the jury to understand the evidence presented to it and to resolve the matters at issue because such medical issues are "beyond the ken" of the average juror. See Conn. Code Evid. §§ 7-2, 7-3, and 7-4. Further, the jury was free to evaluate Robbins' credibility and to accept or reject his opinions. See *State* v. *Hooks*, 80 Conn. App. 75, 82, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003). As a result, the court did not abuse its discretion by allowing the expert testimony.[4]

---

[4] The defendant argues for the first time on appeal that the court improperly allowed Robbins to opine about how he would have treated the hypothetical patients rather than testifying about an objective standard of care. Although the defendant did not properly object to that testimony at trial, he now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Because that is an evidentiary claim, it fails under the second prong of *Golding*. See *State* v. *Carneiro*, 76 Conn. App. 425, 430, 820 A.2d 1053, cert. denied, 264 Conn. 909, 826 A.2d 180, cert. denied, 540 U.S. 915, 124 S. Ct. 304, 157 L. Ed. 2d 208 (2003).

The judgment is affirmed.

In this opinion the other judges concurred.