STATE OF CONNECTICUT *v.* HONG T.*

Superior Court, Judicial District of Hartford
File Nos. CR-02 563146S, CR-02 562000S

Memorandum filed July 22, 2004

* To protect the privacy interests of the victim, surnames, including the defendant's, are not being disclosed so that her identity may not be revealed. See General Statutes § 54-86e.

*Robin D. Cutuli,* assistant state's attorney, for the state.

*Michael A. Georgetti* and *Salvatore Bonanno,* for the defendant.

## INTRODUCTION

KELLER, J. On April 15, 2004, in these consolidated cases, the jury found the defendant guilty in Docket No. CR-02 563146S (first information) of two counts of assault in the third degree pursuant to General Statutes § 53a-61 (a) (1), one count of assault in the second degree with a dangerous instrument in violation of General Statutes § 53a-60 (a) (2) and one count of injury or risk of injury to a child in violation of General Statutes § 53-21 (a) (1). In Docket No. CR-02 562000S (second information), the jury found the defendant guilty of one count of injury or risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1).[1]

The defendant has moved for a judgment of acquittal on all counts pursuant to Practice Book § 42-51 or, in the alternative, a new trial pursuant to Practice Book § 42-53. The defendant states three identical grounds for relief in each motion. First, the evidence was insufficient to support the jury's findings of guilt on the following three counts: assault in the second degree in the first information and the risk of injury and sexual assault in the second degree counts in the second information.[2] Second, the convictions on the four counts in the first information, two counts of assault in the third degree,

---

[1] The jury found the defendant not guilty of two additional counts of injury or risk of injury to a child alleged in the second information.

[2] Although the defendant claimed insufficiency of evidence to support the guilty verdicts on all six counts in his written motions, at oral argument he indicated this claim was only as to three counts.

one count of assault in the second degree and one count risk of injury, violate the double jeopardy rule against multiple punishments for the same offense in a single trial. Third, and finally, the risk of injury statute, § 53-21 (a) (2), alleged in the third count in the second information, as applied to the facts of this case, is so vague and indefinite as to violate due process.

## I

The defendant claims that the evidence was insufficient to support a verdict of guilty on the count of assault in the second degree in the first information and on the counts of risk of injury and sexual assault in the second degree in the second information.

In reviewing a claim for insufficiency of evidence, the evidence must be construed in the light most favorable to sustaining the verdict. If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. The question is whether a reasonable view of the evidence supports the jury's verdict of guilty. *State* v. *Torres*, 82 Conn. App. 823, 825–26, 847 A.2d 1022, cert. denied, 270 Conn. 909, 853 A.2d 525 (2004); *State* v. *Leon-Zazueta*, 80 Conn. App. 678, 681–82, 836 A.2d 1273 (2003), cert. denied, 268 Conn. 901, 845 A.2d 405 (2004).

With respect to the conviction on the count of assault in the second degree in the first information, the defendant claims that the evidence was insufficient to support the guilty finding. He points to the testimony of the medical director of the hospital emergency unit who examined the victim on June 28, 2002. James F. Wiley, II, testified in response to a defense hypothetical that striking someone in the genital area with the pointed part of an iron would cause lacerations or bleeding.

The injuries he noted in the victim's genital area, which she attributed to being struck with a clothes iron by the defendant, were major swelling and extensive bruising, not lacerations or bleeding. The defendant argues that this renders the evidence insufficient to support a verdict for assault in the second degree with a dangerous instrument under § 53a-60 (a) (2). Wiley, however, testified that the injuries he observed on the victim were consistent with her being struck in the vaginal area with an iron. He stated that the bruising and swelling he observed in the victim's genital area several days after the alleged assault would be consistent with an iron being rammed into that area, especially if the victim was moving and not being directly penetrated in the vaginal area with the iron. The jury could have reasonably and logically concluded that the injuries observed by the physician were consistent with the way the victim testified the defendant struck her with the iron, especially given the fact that the victim said she was wearing shorts during the assault.

Moreover, the defendant's argument ignores the essential elements of assault in the second degree. The state does not have to prove that bleeding or lacerations were caused by the dangerous instrument to prove the commission of assault in the second degree with a dangerous instrument. Rather, the state has to prove that physical injury, defined as any impairment of physical condition or pain, has been intentionally caused by an instrument *capable* of causing serious physical injury, defined as any impairment of physical condition, or pain, causing serious disfigurement, serious impairment of health, or serious loss or impairment of the function of any bodily organ. One witness, Detective Jeffrey Glaude, testified that the defendant told him he picked up the iron in order to kill himself with it by hitting himself in the head. This evidence of the defendant's own statement, combined with Wiley's testimony, the

victim's testimony as well as other evidence, supports the jury's finding of guilt on assault in the second degree.

The defendant next argues that the state's DNA expert, Carl Ladd, of the state police forensic laboratory, testified that the small amount of male genetic material on the handle of the sexual aid used in the commission of the sexual assault in the second degree proves that the defendant could not have handled the device the way the victim claims he did–repeatedly manipulating it in and out of her vagina.

There was no testimony by Ladd that inevitably calls for any such conclusion. There was testimony that the victim's DNA was present on all portions of the sexual aid, and that there were also smaller amounts of unattributed male DNA on the handle and the midsection of the aid. Ladd further testified that one would not expect extremely large amounts of DNA on an object as the result of a person's touching the device. In fact, he stated that if one were to touch a coffee cup, one might leave some skin cells suitable for a DNA sample, but it would not necessarily happen every time. Nothing about Ladd's testimony was so inconsistent with the other evidence supporting the allegation that the defendant sexually assaulted the victim with the sexual aid he purchased. The jury, viewing all the evidence introduced as to the sexual assault, could have reasonably and logically found that the defendant committed this offense.

Finally, the defendant argues that the evidence on the third count of the second information, risk of injury, was insufficient because the jury could not have found beyond a reasonable doubt that the defendant's inappropriate touching of the fourteen year old victim's intimate parts over the course of one year, on diverse dates between May, 2001, and June, 2002, was "likely

to impair her morals" because she admitted that during some part of that same year, she also was having intimate relations with her eighteen year old boyfriend.

At the beginning of the trial, the defendant moved, pursuant to § 4-11 (4) of the Connecticut Code of Evidence and General Statutes § 54-86f, for permission to admit evidence of the victim's sexual history with this boyfriend, claiming that such evidence was necessary and relevant to the issue of intent in the nonsexual charges in the first information, the cause of the victim's injuries, the victim's credibility and the issue of the origin of fluids found on the sexual aid. The court agreed and granted the defendant's motion to admit such evidence.

The defendant made no claim in his motion under § 4-11 (4) of the Connecticut Code of Evidence or any argument during the trial that this evidence was admissible to prove either that the victim consented to any inappropriate touching by the defendant or that his inappropriate touching was unlikely to impair her morals. The defendant's trial strategy was to deny steadfastly that the conduct alleged to be in violation of the risk of injury statute in the third count of the second information ever occurred. In light of the statutory restrictions on the admission of such evidence of other sexual conduct of the victim, any suggestion of its use for these latter two purposes would have been ruled improper. "The rape shield statute excludes evidence of prior sexual conduct of the victim of a sexual assault, unless one of the statutory exceptions is satisfied." *State* v. *Christiano*, 228 Conn. 456, 459, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994); *State* v. *Rolon*, 257 Conn. 156, 177–78, 777 A.2d 604 (2001); *State* v. *Rinaldi*, 220 Conn. 345, 354, 599 A.2d 1 (1991). "Our legislature has determined that, except in specific instances, and taking the defendant's

constitutional right into account, evidence of prior sexual conduct is to be excluded for policy purposes." *State* v. *Christiano*, supra, 469.

To suggest that because two actors were perpetrating sexual abuse on an underage girl, only the *first* perpetrator would be guilty of risk of injury is not persuasive. In the past, defense attorneys at times had unrestricted opportunity to pursue evidence of the entire sexual history of a sexual assault victim to suggest that a victim who was not "pure" consented to, or at least was not harmed by, the act. It is this kind of highly prejudicial assault on the morals of the victim that the rape shield law is designed to prevent. Moreover, there was no clear evidence that the victim's relationship with her boyfriend preceded the commencement of the defendant's molestation of her. The victim testified that as of February, 2002, she was having intercourse with her boyfriend. She also testified, however, that the defendant had been fondling her after he came home from work on a number of days, for more than one and one-half years, prior to the crimes alleged here. It was not unreasonable or illogical for the jury to conclude that the indecent and incestuous acts the defendant perpetrated on his own child were "likely to impair her morals," even if the jury concluded, and it reasonably could have, that relations with her boyfriend were occurring simultaneously. The defendant's argument also ignores the actual wording of this element of the crime–the jury must find the behavior was *likely* to impair the child's morals, not that it necessarily *did* impair them. Lack of an actual injury to the morals of the victim is not relevant. Actual injury to morals is not an element of the risk of injury offense. *State* v. *Burton*, 258 Conn. 153, 161, 778 A.2d 955 (2001); *State* v. *Eastwood*, 83 Conn. App. 452, 476, 850 A.2d 234 (2004).

The court is satisfied that the body of evidence reasonably, logically and legally supports the jury's verdicts on the three counts for which the defendant claims

the evidence was insufficient. In returning its verdicts of guilty, the jury rejected the defendant's claims and defenses. It is the jury's responsibility to assess the evidence and the credibility of the witnesses, and to determine the facts in accordance with the court's instructions. Upon review, the court is satisfied that the jury discharged its duty in accordance with the law.

## II

The defendant's second argument is that it would be double jeopardy to convict him of all four counts in the first information because his convictions of two counts of assault in the third degree, one count of assault in the second degree and one count of risk of injury constitute impermissible, multiple convictions for the same offense and that the state cannot divide a single offense into minute subparts without offending the double jeopardy clause.

The state's long form information in the first information was amended in response to the defendant's request for a bill of particulars and further amended, with the permission of the court, during the trial to conform to the evidence. In the first count, the state alleged that the defendant had committed assault in the second degree "on or about June 25, 2002 at 868 Flatbush Avenue in the city of West Hartford, when, with the intent to cause physical injury to another person, he caused such injury to such person by means of a dangerous instrument, specifically a clothes iron." In the second count, the state alleged that the defendant committed the offense of assault in the third degree "on or about June 25, 2002 at 868 Flatbush Avenue in the city of West Hartford, when, with the intent to cause physical injury to another person, he caused such injury to such person by hitting such person with an umbrella." In the third count, the state alleged that the defendant committed the offense of assault in the third degree on

or about June 25, 2002 at 868 Flatbush Avenue in the city of West Hartford when, with the intent to cause physical injury to another person, he caused such injury to such person by hitting such person with his hands."[3] In the fourth count, the state alleged that the defendant committed the offense of risk of injury in violation of § 53-21 (a) (1) on or about June 25, 2002 at 868 Flatbush Avenue in the city of West Hartford when "he committed an act likely to impair the health of a child under the age of sixteen years by hitting such child with a clothes iron, an umbrella and his hands." The defendant's double jeopardy argument is disjointed, but one type of relief he suggests—that a sentence only be imposed on the risk of injury count—helps clarify it.[4] He contends that his assault convictions and his conviction of risk of injury where that count alleged, conjunctively, that each of the three assaults was "an act likely to impair the health of a child," violate the double jeopardy prohibition because assault in the third degree and assault in the second degree are lesser offenses included within risk of injury likely to impair the health of a minor.

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise

[3] The defendant has not argued that his two convictions of assault in the third degree under the first information constitute multiple punishments for one act, and such an argument would not have been successful. Each assaultive act alleged in each of these two counts resulted in separate injuries to the victim, and, therefore, each constituted an entirely separate and distinct violation of § 53a-61 (a) (1). "[D]istinct repetitions of a prohibited act, however closely they may follow each other . . . may be punished as separate crimes without offending the double jeopardy clause." (Internal quotation marks omitted.) *State* v. *Miranda*, 260 Conn. 93, 120, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002).

[4] If the defendant's double jeopardy argument is correct, the proper remedy would be to combine the convictions on all the counts and impose one sentence. It would not be appropriate to vacate any of the convictions or order a new trial on all counts. *State* v. *Howard*, 221 Conn. 447, 463, 604 A.2d 1294 (1992); *State* v. *Elsey*, 81 Conn. App. 738, 751–52, 841 A.2d 714, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004).

out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Snook*, 210 Conn. 244, 264, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989).

The defendant has not clearly addressed the first issue. Did the second degree assault charge and the risk of injury charge arise out of the same transaction? Did each third degree assault and the risk of injury charge arise out of the same transaction? The jury could have relied on evidence of just one of the assaultive acts to find the defendant guilty of the risk of injury count because the state alleged the three assaults conjunctively as constituting risk of injury. The jury only had to find that one of the three assaults also constituted risk of injury. For purposes of conducting the most complete analysis of the defendant's claim, however, the court will assume that the jury, in finding the defendant guilty on all three assault counts, also found that all three of those assaults constituted the same transaction that resulted in the commission of the risk of injury offense and move on to the second issue.

Are assault in the second degree or assault in the third degree the same offenses as the offense of risk of injury likely to impair the health of a child? The constitutional validity of convictions for the same transaction under two distinct statutory provisions is traditionally analyzed by inquiring whether each provision requires proof of a fact of which the other does not require proof. *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *State* v. *Palmer*, 206 Conn. 40, 52, 536 A.2d 936 (1988). If the two counts stand in the relationship of greater and lesser included offense, then "the greater offense is . . . by definition the 'same' for purposes of double

jeopardy as any lesser offense included in it." *Brown* v. *Ohio*, 432 U.S. 161, 168, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Goldson*, 178 Conn. 422, 425, 423 A.2d 114 (1979).

The Connecticut Supreme Court has previously applied the *Blockburger* test to cases where defendants were convicted of both assault in the third degree and risk of injury, or both assault in the second degree and risk of injury. Prior cases have held that even if the assault charge and the risk of injury charge arose out of the same act, the elements of the two charges are distinct and dissimilar and are not the same offense for double jeopardy purposes. See *State* v. *Peters*, 40 Conn. App. 805, 828–29, 673 A.2d 1158 (holding that assault in third degree is not lesser included offense of risk of injury), cert. denied, 237 Conn. 925, 677 A.2d 949 (1996); *State* v. *Davis*, 13 Conn. App. 667, 671, 539 A.2d 150 (1988) (holding that assault in third degree is not lesser included offense of risk of injury); *State* v. *Trujillo*, 12 Conn. App. 320, 334–36, 531 A.2d 142 (holding that assault in second degree is not lesser included offense of risk of injury), cert. denied, 205 Conn. 812, 532 A.2d 588 (1987).

In conducting a *Blockburger* inquiry, one examines the relevant statutes, the information and the bill of particulars, not the evidence presented at trial. One must make a two part inquiry. Looking only at the information, and not to the evidence adduced at trial, the defendant's contention that the assaults in the third degree and the risk of injury arose out of the same transaction and that the assault in the second degree and the risk of injury also arose out of the same transaction could presumably be an acceptable one; however, there is the second part to the inquiry, which is whether assault in the third degree and assault in the second degree are lesser offenses included within risk of injury likely to impair the health of a minor. As noted by the

previously cited cases, they are not. As charged here, both assault in the third degree and assault in the second degree require proof of the following elements that are *not* required to prove risk of injury: (1) the defendant intentionally engaged in conduct; and (2) that conduct caused physical injury to the victim. Assault in the second degree also requires further proof that the defendant intentionally engaged in conduct that caused physical injury with a dangerous instrument. Risk of injury requires proof of the following elements that are *not* required to prove assault in the second or third degree: (1) the defendant committed an act upon the person of the victim that was likely to be injurious to the victim's health; (2) the defendant had the general intent to perform the act; and (3) the victim was under sixteen years of age at the time of the incident. Consequently, it is possible to prove both assault in the third degree and assault in the second degree in the manner charged in the information without necessarily proving risk of injury in the manner charged. Assault in the second degree and risk of injury, therefore, do not stand in relationship to each other as greater and lesser offenses, and assault in the third degree and risk of injury do not stand in relationship to each other as greater and lesser offenses. The convictions of assault in the third degree, assault in the second degree and risk of injury as charged do not violate double jeopardy.

### III

The defendant's third claim is that the risk of injury statute, § 53-21 (a) (2), as alleged in the third count of the second information, is constitutionally void for vagueness in that it did not give him sufficient notice that touching the intimate parts of the victim was likely to impair her morals if she simultaneously or previously was engaging in sexual conduct with another adult, namely, her eighteen year old boyfriend. At oral argument, the defendant conceded that his void for

vagueness claim was actually more of an insufficiency of evidence argument, which has been addressed and rejected in part I. Nevertheless, this constitutional claim will be briefly addressed here.

The party attacking a validly enacted statute bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt. Courts must indulge in every presumption in favor of a statute's constitutionality. The void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute and the guarantee against standardless law enforcement. If the meaning of a statute can be fairly ascertained, a statute will not be void for vagueness. References to judicial opinions involving the statute can help in ascertaining a statute's meaning to determine if it gives fair warning. *State* v. *Jason B.*, 248 Conn. 543, 556, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999); *State* v. *Hall*, 82 Conn. App. 435, 441–42, 844 A.2d 939 (2004).

Both this particular section of the risk of injury law, § 53-21 (a) (2), enacted in 1995, and its less specific predecessor, General Statutes § 53-21, have withstood several void for vagueness challenges. The behavior subsection (a) (2) prohibits—contact with the intimate parts of a child under sixteen years of age in a sexual and indecent manner—has been held to constitute the offense of risk of injury for well over two decades. The statutory provision with which the defendant was charged in count three of the second information states: "Any person who . . . (2) has contact with the intimate parts, as defined in [General Statutes §] 53a-65, of a child under the age of sixteen years . . . in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony . . . ." General Statutes § 53-21 (a) (2). A 1995 amendment to § 53-21, Public Acts 1995, No. 95-142, divided

the risk of injury statutes into two subdivisions. Subdivision (2) was designed expressly to codify that the statute prohibited, as expressed in case law preceding the 1995 amendment, contact with the intimate parts of a child under sixteen years of age in a sexual and indecent manner. *State* v. *James G.*, 268 Conn. 382, 408–409, 844 A.2d 810 (2004); *State* v. *Pickering*, 180 Conn. 54, 63, 428 A.2d 322 (1980). "A vagueness challenge can be surmounted if interpretations of the statute by our appellate courts elucidate the reach of the statute's prohibitions." *State* v. *Coleman*, 83 Conn. App. 672, 677, 851 A. 2d 329 (2004); *State* v. *Jason B.*, supra, 248 Conn. 568.

The defendant argues that the statute does not fairly warn that its terms can be violated when the victim may already have been "morally impaired." He points to no authority that states that such a prohibition is less clear if another person also has sexually violated the child. His argument also overlooks the actual wording of this element of the crime—the jury must find the behavior was *likely* to impair the child's morals, not that it necessarily *did* impair them. Lack of an actual injury to the morals of the victim is not relevant. Actual injury to morals is not an element of the risk of injury offense. *State* v. *Burton*, supra, 258 Conn. 161; *State* v. *Eastwood*, supra, 83 Conn. App. 476. It was not unreasonable or illogical for the jury to conclude that acts perpetrated on a thirteen or fourteen year old child by her own father are likely to impair her morals, regardless of any conduct that may have occurred between the victim and her boyfriend.

The defendant's argument that a sexually molested child's morals are not likely to be impaired further by a subsequent perpetrator, previously discussed in part I, would lead to absurd consequences and bizarre results. Common sense must be used in statutory construction,

and a statute should not be interpreted in any way to thwart its purpose or so as to lead to absurd consequences and bizarre results. *State* v. *Hall*, supra, 82 Conn. App. 442; *Keeney* v. *Fairfield Resources, Inc.*, 41 Conn. App. 120, 132, 674 A.2d 1349 (1996).

Finally, the defendant's vagueness argument would not even appear to be applicable to the facts here unless the defendant, at the time he was committing the acts constituting the offense, *knew* the victim was engaged in sexual conduct with someone else. Otherwise, how could the defendant have not been afforded a reasonable opportunity to know his actions were prohibited even if the victim had sexual intercourse with another adult? The uncontradicted evidence here is that the defendant did not learn of the existence of the victim's relationship with her boyfriend until the evening of the June 25, 2002 physical assaults, *after* the occurrence of the conduct that led to his conviction on the risk of injury charge alleged in the third count of the second information. In fact, prior to the events that led to his convictions, he had solicited from the victim a written statement that she would not have any boyfriends.

Section 53a-21 (a) (2), as interpreted by case law, provides fair warning of the conduct that it prohibits and is not void for vagueness as applied to the facts here.

## CONCLUSION

For the foregoing reasons, the defendant's motions for a judgment of acquittal and a new trial are denied.